0 9 1 2 8 7 In Re Arvinmeritor May it please the court. Theodore Olds for Appellant Arvinmeritor My client's inventors, Mr. Wilkes and Mr. Dean, discovered and solved the problem that had to do with actuators for car door locks and windows. And looking at the patent very briefly, it's Appendix 71 and continuing on, there's a motor that will drive through a clutch to drive an actuator to unlock the door or move the window. The racing problem was due in part to friction, right? Not that narrowly, Your Honor. No. The racing problem occurs when one manually unlocks the door or manually moves the window. But I thought the board found, based on some statements in the patent, that the racing problem was caused at least in part by friction problems, right? I don't recall that section of the board's opinion. I'm not saying they didn't say that. But I don't believe there's anything in my client's patent that says it's friction generally. In 1415 of the rehearing decision, they look at Column 3 of the patent and they say that this is a statement that the racing problem is caused by friction. It is friction once there's misalignment between the two parts that are turning. That's correct, but it's not friction. If you look at the patent generally, if it were operating properly, and if you look at Column 2, Line 10 of the patent, there's clearance at that between the shaft and the part 20 that rotates about the shaft. And it's only when there's misalignment during the back drive that there is contact there. So there may well be friction, but no one knew about that friction until the problem was discovered. The friction is what causes the noise and vibration, I assume. Probably true. So in part it's the absence. I think Judge Dyke is quite right that it's the friction that caused the problem, but I think it's the negative friction, isn't it? That is, it's the absence of continuing contact between the shaft and the other piece that causes the looseness. No? Once one discovers the problem, perhaps you could get to that conclusion. But stated that broadly, the entire operation of a gear is friction, and everything is friction in that sense. And it's not until one discovers that what's really going on is the misalignment, like shown in Figure 2 of our patent, that one can start thinking about solving that problem. Well, what the board said was Coquit suggests using different geometries to reduce friction, correct? Yes. And they said that that would lead one to use different geometries to reduce friction in this context, for example, in the knoll reference, correct? That's what the board said, yes. So what's wrong with that? Well, looking at the prior art, Knoll or Kajiyama, or the prior art as mentioned in my client's patent, there was no understanding of there being friction in the sense that there would have been in Coquit, since one didn't realize that this misalignment, such as shown in Figure 2, was occurring. A worker in this art would have thought there was clearance there. They knew when there was back drive there was noise and there was vibration, but they didn't know the problem, as shown in Figure 2, was what was going on. So once you knew the problem, and with some hindsight, perhaps you could start looking through old patents and find something that has a reduction of friction. But the prior art assumed there was no contact there at all. In fact, it assumed there was clearance. So what you're saying is that if you knew that the problem was friction, you might use Coquit, but that here you wouldn't know the problem was friction? Is that what you're saying? Yeah, and friction is too broad of a term, because friction has to do with everything in this entire gear tree. The problem isn't friction. The problem is the misalignment, as shown in Figure 2 of our patent. And once you knew that there was misalignment, such that there would be contact, then you might be able to say there's friction. But until you discovered that problem, until you knew that was what was going on, one didn't realize that there was friction, because the entire prior art, the Noel patent, the Kajiyama patent, and what we've discussed as prior art all assumed there was clearance there. Is the invention the recognition of the problem, or is the invention the solution to the problem that was arrived at by the inventor? Well, I think the recognition is probably part of it, but I think the solution is certainly a bigger part of the invention. But then the solution was to how to solve the friction or non-friction or the looseness problem, at which point the prior art cited becomes quite relevant, doesn't it? Well, you're asking a hypothetical, because within the prior art was not a recognition of the problem. But it was a recognition of how to solve the problem. Co-quat, is that how it's pronounced? I don't know. I'll call it the French reference. However it's pronounced clearly addressed the solution to the problem, didn't it? No, it did not. It clearly addressed some problem in some unknown machine that had friction and had lubrication. And it could be any number of types of friction that it was talking about. It could have been friction due to the lubrication that it had. It could have been friction due to the type of machine it had. One thing we know for certain, it's not the kind of friction we see in Figure 2 where there's misalignment between these parts. And there's nothing within the prior art that talks about that problem being known in the prior art. So what you're saying is that a solution to friction wouldn't have been used unless you knew what the source of the friction was? Well, first of all, there was no prior art that identified the problem as shown in Figure 2. No, but there's prior art that suggested that using the different geometries would be a way to reduce friction, right? The French reference appears to say that. However, it's in a much different environment. So what you're saying is that unless you knew what the source of the friction was and you're, in your view, tilting, you wouldn't use the prior art reference to reduce friction? Well, even more generally, until you understood that there was tilting, you wouldn't have known friction was a problem at all. Until you understood that problem, that there was tilting and then contact, you wouldn't have known that friction was the problem because there was clearance. But I thought that Ford found against you on that. That's what I started out with. They said that Column 3 suggests that this was a problem that was caused by friction. If you can help me, Your Honor, or perhaps on my rebuttal I'll read through 3 and answer that question directly. But I'm here to challenge what the Board did. Why don't you look at the rehearing decision, particularly at 14 and 15, and see if that works. But going back to it, the French reference, quote, unquote, cannot be read to solve any friction in any application anywhere. That's simply beyond any type of law that this Court has set forth for an obviousness determination. And until one understood the contact that was going on there might have caused friction, until one understood that contact was occurring, it would only be through hindsight that you'd think of solving that problem that way. And we've put forth a good number, a good deal of evidence. The problem that I'm having is that the Board is saying that the patent is recognizing that the prior art was trying to solve this problem by reducing friction, by lubrication, by fine milling of the surfaces. And so they're saying they find in the patent itself a suggestion that the prior art recognized that there was a friction problem here. Well, first of all, the section of Column 3 that they pointed to that talked about lubrication and perhaps talked about friction also is not prior art. It's talking about internal testing and internal things that Arvo Maratori tried to do to solve the problem of noise and vibration before it realized, or at least before it solved the problem of the hula hooping or the racing as shown in Figure 2. So when this patent talks about lubricant was tried and it didn't work, things like that, they're talking about internal, non-public tests. And none of that is prior art. That's only found after the filing date of my client's patent application. It's nowhere in the prior art. So this sentence is wrong on A68. They say this sliding resistance is clearly friction as recognized by the prior art attempts to reduce the backdriving force by lubricating the bore and shaft surfaces. Sure. One big issue here is the PTO has found that lubrication was part of the prior art due to some statements made by the drafter of the Wilkes patent. But what they're saying here is that the prior art recognized that the problem here was caused by friction. There's contact, which always results in friction, certainly, if there's relative movement. But no one recognized that that contact was occurring until the patentee found that out. So it's not part of the prior art. That's a critical issue here. Let us hear from the PTO. We'll give you your full rebuttal time back. Mr. Kelly? May it please the Court, good morning. I'd like to get right to the friction issue. The Wilkes patent is clear that tilting does not cause the problem. It merely amplifies the problem. And this is at Column 2 of the patent at Line 43. The patent says, The racing effect will be amplified if the rotating component, such as gear wheel 19, is out of balance. Now, the reason that the out-of-balance situation can amplify the racing effect but not create it is because it moves the center of gravity of the pinion beyond the center of the shaft. Remember what the friction is doing here. The friction is making the pinion stick to the side of the shaft. So when the pinion tries to rotate about the shaft, it's touching it, and it has to move like a hula hoop. And so this orbiting point of contact actually creates a centrifugal force which adds to but does not create the back-driving force. When the pinion tilts so much as to move the center of gravity beyond the shaft, it merely amplifies the problem. It doesn't create the problem. Now, as to the prior art knowing about friction, the Wilkes patent is clear about what the prior art tried to do. In fact, it actually mentions low-friction materials, and that's at Column 3, Line 15. Low-friction plastics, highly polished bearing surfaces, lubrication. Those are all things the prior art did to overcome the friction problem. Now, responding to the issue about whether or not, in fact, this can be credited to the prior art or not, the Board found that this comes in the prior art discussion. The figures are labeled prior art, and Arvind Meriter has submitted zero evidence that it wasn't in the prior art. If I understand the Board's position, the Board's position is that the Wilkes patent did not discover the problem, that the problem was understood before that? Yes. Is this one of those cases in which the invention is the discovery of the problem rather than the solution? I think the Board said no to that argument. Am I mistaken about that in their rehearing? No, that's right, Your Honor. That's correct. And what they sort of shifted this case to is their statement that it's the tilting that causes the problem, and there's nothing in the patent that says the tilting causes the problem. In other words, even if, hypothetically, they took actuators apart and they themselves for the first time noticed this tilting phenomenon, that it amplified the racing effect, that wasn't causing the problem. That's not what their patent says. It was merely amplifying a problem that already existed, a problem that the prior art knew was related to friction, and a problem that they were trying to overcome with friction-reducing measures. And that the prior art tried to solve by friction-reducing measures. Absolutely. And the declaration they point to, Nigel Spurr's declaration, which is at A194 and A195 of the record, what Nigel Spurr does is he points back to the inventor's test results, and the inventor's test results are on the following page at 219. And the inventor doesn't even say that this solution solved the problem. In fact, what the inventor says is we're not capable here. All units are to be 100% tested. Forces measured are repeatedly greater than the specified maximum. They ask for Chrysler to remove the standard. In other words, even the inventor, even after testing this modified pinion, did not find this to be a solution. Arvin Meriter has raised a number of secondary consideration arguments. They did not discuss them this morning, so we will refer to our briefs on that. And unless the court has any further questions, we'll yield the remainder of our time. All right. Thank you. No questions? Your Honor, if we could go to the test results the counsel was just referring to. One of them, A220, shows that 16, quote, square hole pinions were looked at and only one in 16 failed. And it's not clear what caused the failure or what the failure was, but certainly this invention solved the problem. The other evidence, I didn't get a chance to get to the evidence of non-obviousness, but all of that evidence is very important here. Nothing within the prior art, none of the mention of the lubrication, have anything to do with the problem that the Wilkes and Mr. Dean solved. And that was an unexpected result. Let's not get into things that you didn't cover in the beginning, because he didn't. With regard to the friction, if you look again back at the test results, one thing, there's a failure mode analysis, which is something these engineers do, and they think of a number of ways that things could fail. And at A212, one of the failures that it mentions is if lubricant were used, friction might increase. Now the French reference, the friction it mentions, since it's primarily dealing with lubrication, might very well be lubricant friction. It might be something that's caused by the lubrication. I don't know. But until one understands what the problem is in the Wilkes patent, one could not have known that there was that contact. And whether it's the tilting or whether it's a simple out-of-round without the tilting, it's still something that wasn't understood in the prior art. There's no proof anywhere that that was known in the prior art. And the only evidence here is that it was something internally discovered within Arvin Meritor. Until one knows that that is what's going on and what's causing the noise and vibration, one could not have looked at the prior art to find, say, the French reference or these other references because Noel … But the board found that the tilting only enhanced the problem, that it didn't create it, right? There may have been a problem beyond the tilting, but to pass the test to overcome the noise, one had to solve all of the problems, even the enhanced problem. So discovering that, discovering figure one shows that under certain conditions there would be contact without the tilting, I believe, and then figure two shows the tilting, which enhances, if you will, the problem. But all of that had to be solved. And until one understood that there was contact there, all you would have in the prior art is the Noel reference and the Kajiyama reference, both of which have clearance. So they wouldn't have known that there was friction causing any of that or where it was occurring. In addition, on a more minor point, claim two states that it is the relatively rotating part, the outer female part that has the facets on it. In all of the prior art, the French reference and the Taki reference put their facets on the more stationary part. And there's no evidence here of anything that would say, let's change the rotating part here, the outer part of the Wilkes patented device, because that's the rotating part, and that's the one that we put, or my client's inventors put the facets on. There's nothing that supports that part of the decision. The board said something like, the French reference, we're reading it as broadly teaching, putting it on any surface, but they can't create prior art by simply saying things like that. The French reference puts facets on a stationary bearing and not on the rotating shaft. And claim two requires it's the relatively rotating outer part that has the facets. And there's nothing within the record that would support modifying that, even if you could modify claim one to reduce friction or to improve lubrication. So I guess to summarize this and to focus more on the friction, until one knew that there was this problem of there being contact under certain conditions during back wheeling or manual movement, you wouldn't have known that there was contact at all at that location. All you have in the prior art is Noel and Kajiyama. They both have clearance. There's no apparent contact or friction there. And while I'm not permitted to bring up the evidence of that obviousness, please pay careful attention there because that's particularly powerful in this case. They solved the problem nowhere known in the prior art with something that had apparent other reasons. All right, sure. Thank you. Thank you.